WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alexis Tembra Neal,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Andrew Saul,<br><br>　　　　　Defendant. | No. CV-19-0065-TUC-LCK<br><br>**ORDER** |

Plaintiff Alexis Neal filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner), Andrew Saul. (Doc. 1.) Before the Court are Neal's Opening Brief, Defendant's Responsive Brief, and Neal's Reply. (Docs. 23, 26, 27.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the administrative record, the decision of the Commissioner is affirmed.

**FACTUAL AND PROCEDURAL HISTORY**

Neal was born in 1973 and was 39 years of age at the alleged onset date of her disability. (Administrative Record (AR) 342.) She had past relevant work experience as a pharmacy technician and a university enrollment counselor. (AR 158.) Neal filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). After a hearing (AR 82-115), she was granted disability benefits from March 2, 2008, through October 1, 2011 (AR 166-83). Neal filed a second application for DIB and SSI, alleging disability from October 4, 2012. (AR 342.) Neal's application was denied

upon initial review (AR 190-205) and on reconsideration (AR 206-26). A hearing was held on December 2, 2015. (AR 116-37.) The ALJ then found Neal was not disabled. (AR 61-79.) The Appeals Council remanded the case because the exhibit list was incomplete. (AR 55.) A second hearing on that application was held on January 31, 2017. (AR 138-62.) Subsequently, the ALJ found that Neal was not disabled. (AR 33-50.) The Appeals Council denied Neal's request for review of that decision. (AR 9.)

The ALJ found that Neal had severe impairments of major depressive disorder, PTSD, mood disorder, history of scoliosis with left shoulder pain, asthma, migraines, history of wrist injury, carpal tunnel syndrome, chondromalacia patella of the right knee, arthritis of the foot and spine, and status post double mastectomy. (AR 36.) The ALJ determined Neal had the Residual Functional Capacity (RFC) to perform light-exertion work with the following parameters: stand/ walk or sit for a total of 6 hours each; frequent reaching, handling, fingering, and feeling; a structured low impact work setting limited to understanding, remembering, and following no more than short, simple instructions; can respond appropriately to supervision and coworkers but interaction is limited to occasional for supervisors, incidental with coworkers, and none with the public; work must deal with things, not people or data, and is not collaborative. (AR 39.) The ALJ concluded at Step Five, based on the testimony of a vocational expert, that Neal could perform work that exists in significant numbers: silver wrapper, patch worker, and marker retail. (AR 49.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499

F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**DISCUSSION**

Neal argues the ALJ committed two errors: (1) she failed to consider the opinion of Dr. Noelle Rohen; and (2) she misconstrued and rejected, in part, the opinions of Drs. Janice Motoike and An Nguyen. Neal clarified that she is challenging the ALJ's findings only as to her mental limitations in the instant appeal (Doc. 23 at 3); therefore, the Court does not discuss the ALJ's findings regarding her somatic impairments.

**Medical Opinion of Dr. Noelle Rohen**

Neal argues the ALJ failed to evaluate the opinion of Dr. Noelle Rohen, an examining psychologist. Dr. Rohen examined Neal in September 2016 and reviewed some records. (AR 1432.) She obtained historical information as well as data on Neal's present functioning. (AR 1432-34.) Neal indicated that taking Zoloft had improved her mood and stopped her from cutting and suicidal ideation but had not decreased her anxiety. (AR 1433.) She consistently received mental health treatment since 2008, including weekly therapy and a hospitalization in 2012 for a suicide attempt. (*Id.*) Neal reported not having had a stable residence since 2008 (living in shelters and a car) but, in 2016, had been living with her parents. (AR 1434.) She spent her days in her room, socializing on the internet, coloring, reading, and petting the cat. (*Id.*) Her mother conducted the activities of daily living; Neal did not drive, but she forced herself to go outside or to the grocery store every few days. (*Id.*) Neal's appearance was appropriate, she was clean and groomed. (*Id.*) Her eye contact was intermittent with frequent dysphoria, but affect was reactive, and she was cooperative. (*Id.*) Her retrograde memory was sufficient, fund of knowledge was average, and speech and motor activity within normal limits. (*Id.*) Neal scored 26/30 on the MMSE. (*Id.*) Dr. Rohen diagnosed Neal with PTSD and persistent depressive disorder. (AR 1435.) She concluded that Neal did "not appear to have functioned well for years, asserting anxiety too high to return to the workplace, and instead enduring chronic homelessness." (*Id.*) The psychologist opined that Neal could manage her own benefits. (*Id.*)

In her decision, the ALJ did not mention Dr. Rohen's consultative examination. (AR 33-50.) Neal argues it was error for the ALJ not to consider the psychologist's statement that Neal had not functioned well for years. Defendant contends this statement did not qualify as a medical opinion and, if it did, the ALJ's failure to consider it was harmless.

Under the regulations, medical opinions are "judgments about the nature and severity of your impairments(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s) and your physical and mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Portions of Dr. Rohen's report qualified as

1  medical opinion such as her diagnoses and determination that Neal could manage her own
2  social security benefits. The ALJ was required to evaluate those portions of Dr. Rohen's
3  report that qualified as medical opinion. 20 C.F.R. §§ 404.1527(b) & (c), 416.927(b) & (c)
4  ("we will always consider the medical opinions in your case record"; "we will evaluate
5  every medical opinion we receive.") However, Neal challenges the ALJ's failure to
6  consider only one sentence of the report, which stated that Neal "does not appear to have
7  functioned well for years."[1] That statement was not a judgment by the psychologist as to
8  Neal's diagnosis, prognosis, or what she could "still do." Even as to the more general
9  categories of "impairments" or "symptoms" included in the definition of medical opinion,
10 Dr. Rohen did not discuss their severity or nature, or correlate them to Neal's poor
11 functioning. Her statement was vague and does not meet the criteria for a medical opinion
12 under the regulations. Therefore, the ALJ did not err in failing to evaluate this statement
13 by Dr. Rohen.

14      Defendant also argued that any error was harmless. Because the parties briefed the
15 issue, the Court assesses whether it would be harmless if the ALJ's failure to consider Dr.
16 Rohen's statement had been error. Error is harmless if it would not have altered the
17 outcome of Neal's case. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th
18 Cir. 2008) (finding error harmless if it was "inconsequential to the ultimate nondisability
19 determination") (quoting *Stout*, 454 F.3d at 1055). However, "a reviewing court cannot
20 consider [an] error harmless unless it can confidently conclude that no reasonable ALJ,
21 when fully crediting the testimony, could have reached a different disability
22 determination." *Marsh v. Colvin*, 792 F.3d 2170, 1173 (9th Cir. 2015) (finding ALJ's
23 failure to discuss treating doctor's opinion subject to harmless error review) (quoting *Stout
24 v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "[T]he burden of

---

[1] In his response brief, Defendant also discussed Dr. Rohen's subsequent statement that Neal "assert[ed] anxiety too high to return to the workplace." (Doc. 26 at 6.) However, Neal did not challenge the ALJ's failure to consider this portion of Dr. Rohen's report. (Doc. 23.) And, it is merely a reflection of Neal's self-report to the psychologist, not a medical opinion that Neal was unable to work. Because this statement was not raised in Neal's opening brief and it is not a medical opinion that the ALJ was required to evaluate, the Court does not discuss it further in this Order.

showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

If the ALJ had fully credited Dr. Rohen's statement that Neal "does not appear to have functioned well for years," that would not have altered a reasonable ALJ's disability determination. The psychologist's statement was not specific enough to impact the RFC finding. Neal focuses on the fact that the ALJ gave weight to other psychologist's impressions that Neal functioned "moderately well." (Doc. 23 at 9 (citing AR 42, 43).) Those other psychologists, however, offered a functional assessment of Neal's abilities and limitations that the ALJ relied upon in crafting Neal's RFC. (AR 493, 1488.) Even if the ALJ had evaluated Dr. Rohen's opinion that Neal had not been functioning well, Dr. Rohen offered the ALJ nothing specific or contradictory to weigh against the functional assessments of other doctors. Further, the examinations by all three psychologists were relatively consistent with regard to the history Neal provided, her behavior during the exam, MMSE scores, and diagnoses. (*Compare* AR 1432-35 *with* AR 487-92 *and* AR 1479-86.) Because Dr. Rohen's report did not contain additional impairments, limitations, or unique opinions that the ALJ did not otherwise consider in making his findings, any error was harmless. *See Senko v. Astrue*, 279 F. App'x 509, 511 (9th Cir. 2008) (finding error harmless because the doctor's evaluation contained no medical impairments or conclusions not considered by the ALJ). Neal herself did not articulate how consideration of Dr. Rohen's report could have altered the ALJ's findings; rather, she argues that it is "impossible to say" whether it would have impacted the ALJ's ruling. (Doc. 23 at 9.) In light of the vagueness of Dr. Rohen's statement and the similarity between the examinations and reports of the psychologists the ALJ considered, the Court finds any error in failing to consider Dr. Rohen's report was harmless.

**Medical Opinions of Drs. Janice Motoike and An Nguyen**

Neal argues the ALJ erred in rejecting portions of the opinions of two examining psychologists, Drs. Motoike and Nguyen. The opinion of an examining physician generally

is afforded more weight than a non-examining or reviewing physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ gave "significant weight" to the state agency psychological consultants and adopted their findings in "large part." (AR 48.) She also adopted their ultimate conclusion that Neal was not disabled. (*Id.*) Drs. Nathan and Foster-Valdez opined that Neal was moderately limited in understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a day and week without psychological interruption, performing at a consistent pace, interacting appropriately with the public, and responding to changes in the work setting; in all other areas, they concluded she was not significantly limited. (AR 200-01, 221-22.) They determined Neal could perform simple tasks at an adequate pace, but might need repetition to learn new tasks, and would do best with minimal contact with strangers and crowds. (AR 202, 222.)

Psychologist Janice Motoike examined Neal in March 2013. (AR 487.) She observed Neal's grooming, motor activity, and speech to be normal. (AR 490.) Neal was cooperative and had good eye contact. (*Id.*) Her thought content and process were unremarkable. (*Id.*) Her mood was irritable and affect was appropriate but somewhat blunted. (*Id.*) Neal scored 28/30 on the MMSE. (*Id.*) The psychologist found Neal made adequate effort and was persistent and interested in the testing. (AR 491.) Dr. Motoike diagnosed Neal with panic disorder with agoraphobia, PTSD, and depressive disorder. (AR 491.)

Dr. Motoike opined that Neal had no apparent understanding or memory limitations, despite recall difficulties on the MMSE; had no limitation with simple instructions; may have difficulty maintaining concentration over longer periods of time; may have attendance impacted by loss of motivation and difficulty leaving home; could have disrupted understanding, memory, attention, and concentration based on reported dissociation; may have difficulty getting along with coworkers and responding to supervision but had no apparent limitations in socially appropriate behavior; and had no apparent limitation in

responding to changes in the work setting. (AR 493.) The ALJ gave "persuasive" weight to Dr. Motoike's findings "and her overall impression of a person who appears to be functioning moderately well and is generally intact – even without focused mental health treatment." (AR 42.)

Psychologist An Nguyen examined Neal in April 2017. (AR 1479.) At the exam, Neal was appropriately groomed; she was attentive, cooperative, and not easily distracted; and, her energy level was average and her mood normal (although she played with a small beanbag throughout). (AR 1483.) On testing, Neal's intelligence was average with moderate verbal impairment. (AR 1483, 1484.) Neal's neuropsychological testing was in the mildly impaired range (AR 1484), and her memory scores were borderline (AR 1485). Dr. Nguyen diagnosed Neal with unspecified depressive disorder, in partial remission with good response to treatment, unspecified anxiety disorder, panic disorder, PTSD, and unspecified neurocognitive disorder. (AR 1486.)

Dr. Nguyen opined that Neal's memory was borderline but her understanding level was not impaired. (AR 1488.) The doctor determined Neal could carry out simple instructions, make simple decisions, set realistic goals, and interact appropriately with the public and coworkers. (AR 1488.) She concluded Neal would have some difficulty with detailed instructions, sustained concentration, performing within a schedule, working with others, sustaining routine without supervision, completing a workday at a consistent pace, and responding appropriately to supervisory criticism and work setting changes. (AR 1488.) The ALJ gave "persuasive" weight to Dr. Nguyen's findings "and her overall impression of a person who appears to be functioning moderately well in spite of her behavioral health issues." (AR 43.)

Neal argues the ALJ rejected Dr. Motoike's findings that Neal may have difficulty maintaining attention and concentration over longer periods and responding appropriately to supervision. Neal also argues the ALJ rejected Dr. Nguyen's similar findings that Neal would have some difficulty sustaining concentration and responding appropriately to supervisory criticism. The Court disagrees because the ALJ accounted for those findings.

First, the examining psychologists did not find that Neal had a severe limitation in responding appropriately to supervision, only that she "may" have difficulty or would have "some" difficulty. The ALJ gave significant weight to the reviewing doctors, Nathan and Foster-Valdez, who found, to the contrary, that Neal was not significantly limited in responding to supervision. (AR 201, 222.) In turn, the ALJ found that Neal could respond appropriately to supervision; however, she limited Neal to occasional interaction with supervisors, incidental interaction with coworkers, and non-collaborative work. (AR 39.) This was necessarily based on the opinions of Drs. Motoike and Nguyen because the reviewing doctors found Neal's only social interaction limitation was in dealing with the general public. (AR 201, 222.) All the psychologists agreed that Neal could behave in a socially appropriate manner. (AR 493, 1488.) The ALJ's restriction to occasional supervisory contact reflected an incorporation, not rejection of Drs. Motoike and Nguyen's opinions regarding Neal's social interaction limitations.

Second, the examining psychologists did not find that Neal had a severe limitation in concentration, only that she "may" have difficulty or would have "some" difficulty. The reviewing psychologists offered a similar finding that Neal had a moderate limitation in concentrating for extended periods (AR 200, 221), but concluded that moderate limitation did not preclude Neal from employment. (AR 202, 222.) The only doctors that offered an ultimate opinion concluded Neal could maintain an adequate pace and persistence for simple tasks (despite a moderate limitation in concentration); thus, the ALJ's restriction to simple tasks adequately incorporated the examining doctors' similar concentration limitation. Because neither Dr. Nguyen nor Dr. Motoike offered an ultimate opinion that Neal's limitations precluded employment, it was not a rejection of their opinions for the ALJ to determine Neal could still work.

Third, Dr. Nguyen also opined that Neal would have "some difficulty . . . sustaining an ordinary routine without special supervision." (AR 1488.) Neal contends this amounted to a finding that she could not perform competitive employment and required a sheltered work setting. In fact, Dr. Nguyen did not offer an ultimate opinion that Neal's limitations

precluded competitive employment. Dr. Nguyen's category for "sustaining an ordinary routine" was not included in the form completed by the reviewing psychologists. However, based on the terminology and the order in which it falls in Dr. Nguyen's opinion, it aligns most closely to the reviewing psychologists' category of "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms." The reviewing doctors found Neal had moderate limitations in this category but determined she still could perform competitive employment. The ALJ adequately encompassed in the RFC Dr. Nguyen's similar opinion – that Neal had some limitation in sustaining an ordinary routine – by providing for a structured low impact setting that required following no more than short, simple instructions. (AR 39.)

Although it is possible to interpret this record evidence differently, the ALJ's findings are rationale and supported by substantial evidence. *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) (examining the ALJ's interpretation of the words "moderate" and "substantial") (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (2005)). The Court finds the ALJ did not erroneously reject the opinions of Drs. Motoike and Nguyen.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). The Court concludes the ALJ did not err as to the claims raised by Neal. Therefore, Neal is not entitled to relief and the appeal is denied.

Accordingly, **IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall enter judgment.

Dated this 1st day of September, 2020.

_____
Honorable Lynnette C. Kimmins
United States Magistrate Judge